UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D
JUL 2 6 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-450-GWU

ROBERT MITCHELL JONES,                                                    PLAINTIFF,

VS.                              **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                          DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991); Crouch v. Secretary of Health and Human Services, 909 F.2d 852, 855 (6th Cir. 1990). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Crouch, 909 F.2d at 855.

1

The regulations outline a five-step analysis for evaluating disability claims. See 20 C.F.R. Section 404.1520.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

Jones

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In

3

such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Robert Mitchell Jones, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of being status post left knee arthroscopic surgery, status post lumbar decompression diskectomy fusion of lumbar spine, and a history of drug abuse. (Tr. 20). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 21-4). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if he were limited to "light" level exertion, and had no other exertional or nonexertional impairments. (Tr. 600). The VE responded that, although Mr. Jones could not return to any of his past relevant work, there were other jobs that he could perform,

4

and proceeded to give the numbers in which they existed in the regional and national economies. (Tr. 600-1).

On appeal, this Court must determine whether the ALJ's hypothetical question is supported by substantial evidence.

Mr. Jones alleged disability due to lower back pain, which had required a diskectomy and fusion, which he alleged made him much worse. (Tr. 587-8). He was taking pain medication, OxyContin, three times a day, but several doctors had told him that they could not find anything wrong as results of his surgery that would explain his pain. (Tr. 588). He had been dismissed from pain treatment programs for using pain medication that had not been prescribed for him, as well as for a positive urine drug screen for marijuana, which he claimed was a mistake by the laboratory. (Tr. 593-4). The physician he was currently seeing for pain treatment, Dr. Gary Reasor, had suggested using a morphine pump, and had recommended that he use a wheelchair. (Tr. 590). Mr. Jones appeared at the administrative hearing in a wheelchair, and stated that he had been using it for the previous 13 months and it had been given to him by his sister. (Tr. 590). However, he claimed that Dr. Reasor had recommended it. (Id.). Prior to that time, he had been using a walker or crutches. (Id.). Regarding mental problems, Mr. Jones stated that he almost had a nervous breakdown due to marital difficulties and had been psychiatrically hospitalized by Dr. William Briscoe, who prescribed an

5

antidepressant, although he did not feel this was helpful. (Tr. 589, 595). He claimed that his description of large-scale crack cocaine abuse to a consultative psychological examiner in connection with his claim for benefits was untrue, and that he had only made this claim in an attempt to get an advantage for his disability case. (Tr. 594).[1]

Given the plaintiff's untrue statements to the consultative psychological examiner, Dr. Kenneth Starkey, and the fact that Dr. Starkey had diagnosed the possibility of polysubstance dependence and cocaine dependence (Tr. 181-2), any psychological restrictions resulting from this examination could reasonably had been discounted by the ALJ. This would also apply to the "moderate" mental limitations listed by state agency reviewing psychologists subsequently Dr. Starkey's report. (Tr. 224-6, 238-4).

At a subsequent evaluation at the Ridge Behavioral Health mental health treatment clinic, on referral from the plaintiff's neurosurgeon after he indicated thoughts of suicide, the plaintiff protested that the suicidal thoughts would wax and wane and he had no present intention of doing away with himself. (Tr. 369, 373 ). He stated that he was on an unknown antidepressant from a physician at a Comprehensive Care Center (CCC) as well as Xanax from a family physician. (Tr.

---

[1] He asserted that he was not lying in order to get disability, just to get "an advantage." (Id.).

6

Jones

372). The therapist at Ridge recommended that he continue treatment at the CCC, but there are no records from this source. (Tr. 375). No functional restrictions are suggested.

Subsequently, the plaintiff was admitted to the Corbin Baptist hospital's mental health unit under the treatment of Dr. William Briscoe, a psychiatrist, from September 25 through September 30, 2003 due to major depression and suicidal ideation, reportedly with no immediate plan of suicide but having had a thought about overdosing a week earlier. (Tr. 424). The plaintiff was upset by unrelenting pain, and stated that he had been was dismissed from a pain clinic recently after failing a random drug screening. (Tr. 424). He also cited financial stressors. (Id.). He was discharged after five days with pain medications, including Methadone and oxycodone, as well as a supply of Lexapro and Xanax, with an appointment a follow-up in four weeks. (Tr. 424). The diagnosis from Dr. Briscoe was "adjustment reaction with depression," with a Global Assessment of Functioning (GAF) score of "50+" on discharge. (Tr. 421). A GAF score above 50 represents "moderate" symptoms. Diagnostic and Statistical Manual of Mental Disorders (Fourth Edition-Text Revision), p. 34.

No follow-up note appears in the Court transcript. The ALJ inferred that the plaintiff's lack of follow-up treatment was a sign that his problems had resolved. (Tr. 19). The plaintiff disputes this finding on appeal, citing a note dated September 3,

7

2003 from Dr. Briscoe allegedly indicating that the plaintiff was "disabled from gainful employment as a result of his combined medical/orthopedic/psychiatric difficulties." <u>Memorandum in Support of Plaintiff's Motion for Summary Judgment</u>, Docket Entry No. 12, p. 3. The Court cannot locate any such statement in the transcript, and the date of September 3, if correct, would be prior to the plaintiff's admission to Dr. Briscoe's care. In any case, the ALJ would not have been obligated to accept a conclusory opinion of disability, a vocational determination outside the doctor's area of expertise, particularly from a source who cited medical and orthopedic factors for which he had not treated the plaintiff. Given the plaintiff's admission of dishonesty regarding his statements to mental health sources in an attempt to obtain benefits, the ALJ could reasonably have discounted his allegations in this regard, particularly in the absence of any specific restrictions.

However, the ALJ's choice of physical restrictions is not supported by substantial evidence.

There is no question that Mr. Jones underwent a lumbar decompression, diskectomy, and fusion of the L4-S1 levels by Dr. Greg Wheeler on July 30, 2002. (Tr. 170). Subsequently, x-rays and a myelogram showed no specific abnormalities, with "free" nerves and no further disc ruptures. (Tr. 190, 192 393, 462, 491). However, Dr. Wheeler did not list any specific functional restrictions and state agency non-examining reviewers apparently saw only evidence from prior to the

diskectomy and fusion, as it was not mentioned in their discussion of the evidence. (Tr. 204-7, 229-37). The only examining physician to list functional restrictions was Dr. Reasor, the pain management specialist, who filled out a form dated February 16, 2004 limiting the plaintiff to less than sedentary level exertion and less than full-time sitting, standing, and walking, among other limitations. (Tr. 467-70). While the plaintiff's complaints of pain may or may not have been excessive, and he could conceivably have been exhibiting drug-seeking behavior as his difficulties with pain clinics suggested, Dr. Reasor had seen the plaintiff on at least one occasion prior to rendering his opinion, and noted that Mr. Jones, who was using crutches, could hardly stand on the weight machine, had a very unsteady gait, and almost fell to the floor which he attempted to walk without crutches. (Tr. 477). Dr. Reasor found reflexes absent in the lower extremities (Id.), a finding that was the same as a consulting physician at the Cleveland Clinic, Dr. Richard Schlenk (Tr. 393). Both physicians also found decreased sensation. Dr. Reasor, as well as Dr. Schlenk, had also reviewed various old records, which, as previously noted, showed the plaintiff's fusion to be solid and hardware to be in good position (Tr. 393, 477), but Dr. Reasor also cited an EMG from January 31, 2003 showing evidence of lumbosacral radiculopathy (Tr. 475).

The evidence submitted to the ALJ included notes of no more than two office visits with Dr. Reasor (Tr. 473-8), along with another office visits to a colleague, Dr.

9

Cassaro (Tr. 471), thus making Dr. Reasor's status as a treating source somewhat questionable. Nevertheless, he was an examining source who listed objective findings on physical examination, as well as abnormal EMG findings. These findings provide some support for his restrictions, which are uncontradicted by any examining source or reviewer who had access to the entire record. Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994). The statements from various sources that the plaintiff did not have a surgical condition do not equate to a finding that he had no functional limitations.[2] Therefore, the ALJ's rationale that Dr. Reasor's restrictions should be rejected because they were not supported by the objective evidence or by the plaintiff's "hearing testimony and demeanor" (Tr. 18) is inadequate. At a minimum, the ALJ should have sought the opinion of a medical adviser who had access to all the evidence, if the physical restrictions of Dr. Reasor were to be rejected.

The decision will be remanded for further consideration of the plaintiff's physical status.

This 26 day of July, 2006.

G. WIX UNTHANK,
Senior Judge

---

[2] For instance the radiologist to to a postsurgical x-ray of the lumbosacral spine on August 27, 2002 noted limited flexion and extension (Tr. 462), but the ALJ found no restrictions on bending or other postural activities.